I'd like to reserve three minutes if I could. I represent Mr. Snooks. This is a race and gender discrimination case challenging Duquesne Light's denial of a promotion to William Snooks, an African American with a college degree and nearly more than 20 years of experience in favor of Lisa Storer, a white high school graduate with less experience. Let me ask you, we haven't discussed this case, but let me, speaking only for myself, I find this very disturbing. It seems to me that the selection process wasn't fair, that McGill wanted Storer. But I don't see anything here to suggest that the germane part of it, the reason for his motivation for being unfair was based upon either gender or race. And we've got this ride-along, which should never happen. I mean, that is the height of an unfair procedure. That's two days before the second interview. He spends eight hours with her in a ride-along. And some of his interpretation of her answers at the second interview for this take it outside, which he finds better than his, Snooks' answer and the reason I want the job, she basically wants a bigger pension and he wants to use his But to me, he wanted Storer. But why, what is here that would, in this record, that would cause a material issue of fact that the reason that he favored Storer over Snooks had anything to do with Snooks' race or gender as opposed to Storer's personality versus Snooks' personality or her union status. Well, Your Honor, I guess this presents the classic case where there is no direct evidence of either race or gender. And this is probably the run of the cases, Your Honor, where I don't, can I point to what's in Mr. McGill's mind? I can't. What I can show, though, Your Honor, is that when the courts, Judge McKee, you've really summarized a lot of what I was going to say. So it's going to cut to short, maybe. But a jury can find that you've got these two people and there's no, there is, you're right, Your Honor, there is no explanation for why one is treated better than the other when one has a college degree and the company, in fact, thought that was important because they graded him higher. So it's a degree in business. Well, yeah, but you're not in business. And I and that's what the district court took off on and did this whole thing about the courts not accepting this and that. But, Your Honor, in the first matrix, when, when the, that was not the company's matrix, that was just Ms. Miner's own personal matrix. I agree, Your Honor, Ms. He gave higher scores to her that, except in the category of education, the four categories which related to actual job performance, he got, she got 20, he got 19. The reason he wound up higher was she gave him four for education and gave her only two. But on actual, the four job performance categories, Ms. Miner, I think was her name, gave. Who's African American. Right. Yeah. Gave her four fives, five, five, five, five, and gave him five, four, five, five. And the way it worked out at the end, Your Honor, is that Mr. Smooks was ranked number one on Miner's and Mr., well. Yeah, but the selectors could say, look, there's not really a two point difference that relates to the job. Four tenths of a point difference on Miner's, right? I heard that. It's very close. And I agree, Your Honor, that that's, that's a jury could find that way. But the point is, look, we're talking about a summary judgment motion. And what the district court did was did a fact finding, almost, a reasonable jury could find either way on that. I agree. But I think what, I think the importance of this is, Your Honor, is that what the company has done with that evidence. The college degree, for example. Just one example. Whatever it's, whatever, first off, the district court said that you have to experience or a college degree. And I think a fair reading of that, of that posting says that the degree in business or comparable and five years experience. The district court read that as being either a degree or five years experience, fact issue. The, what the company did with it, though, then, is said, well, it doesn't matter. Now, it obviously mattered because they were rated on it. And it does matter. So, could a jury find that that differential is. Find on what? This is a Fuentes case, I believe. Yeah, it is, Your Honor. It is exactly what it is. It's a Fuentes, and that happened to have been my case below. So, I'm partial to Fuentes. I was the trial judge in Fuentes that was affirmed by. Judge Becker, yeah. Becker. But Becker even said, Judge Becker, that to discredit the employer's proffered reason, plaintiff cannot simply show that the employer's decision was wrong, mistaken, since the factual disputed issue is whether discriminatory animus motivated the employer. And that's, that's just what Judge McKee said. Not whether the decision was wise, shrewd, prudent, or competent. Right. And that's what, where I was hung up, too, as well. Well. A lot of unfairness here. I mean, I think it almost bleeds out at you, that. Well, and Your Honor. Aspects that were unfair, but it was hard. Doesn't that. To find that race. They had previously promoted a substantial number of African Americans. There doesn't seem to be any, anything that smelled of race in this case. Well, Your Honor, this, as, as is most, as are most cases. Because people aren't dumb enough in 2009 to, to offer that. But what we have here are. Well, some are, but they, they probably don't come before this court because those cases are settled. But, Your Honor, what, what we have here is, is pieces of evidence that are inconsistent. Pieces of evidence that are implausible. For example, is it implausible to give someone a full day with the decision maker? Yeah, McGill didn't do that. Duff did that, right? But, Your Honor, it doesn't matter who did it. It's a, it's a, it's an opportunity that the white candidate had that the African American candidate didn't have. And whether they, you know, the district court made a big deal. Where's the inference that it's race based? Happens all the time that somebody has a candidate in mind that they like. Her strength was in her personality. It appears, if you read the record, that was her strength. She got along well with other people. She was the union representative with bespoke strength. And so fine, maybe they had her tapped as the one they wanted. But where's the inference that it's race? The inference that it's race is in how they treated her and also the inconsistencies. Your Honor, just as an example, on the, on the one question about the, the drug testing. The employer, yeah, the employer told the HRC, we, Mr. Smooks didn't mention the word, drug testing never came out of his mouth. Mr. Cole then testifies, the other interviewer. Yep, he said it, it's written in my notes, so he must have said it. And now, now the third reason we get come, come summary judgment time is that, well, he may have said it, but he had to be prompted. That's an inconsistency in the Fuentes. There's lots of those, but again, where's the racial or gender animus? It's the incons, your Honor, if I have to, I don't have to show direct evidence. If I do, Fuentes goes away. And Fuentes in all these courts pretext cases. What I do have to show is an inconsistency. There's one, for example, your Honor. And these are, and especially in hiring cases, it's very difficult, because no one's going to be stupid enough to do that. But there's that. There's the treatment of the college. There's the favorable treatment for the white that the African American didn't get. And regardless of who did it, if I get, if I want to be a federal judge and I get an entire day with President Obama, whether we talk about basketball or, or, or, or, you know, anything. You get a president, a whole day with President Obama, you should really shoot for something much higher on the pay scale. I've always learned in my life, shoot low, your Honor. I'm an employment lawyer. But those, those issues of differential treatment, you know, this court in the Shemantle case versus Slippery Rock talked about that. Because in that case, it was a gender case. But the woman had access to some kinds of training, or I'm sorry, the man had access to some kinds of training that the woman didn't. And the court talked about how that kind of differential treatment is a piece of evidence. This is, there's a lot of little pieces of evidence like that, your Honor, that on a summary judgment record, I get the benefit of. And the district court clearly gave the benefit of those inferences to the defendant. The, the education, the, the benefit went to the defendant. The whole notion of this ride-along that the district court said, well, I have no direct evidence that they talked about the job. Well, okay, A, the district court, and this is where we had talked in the last argument, your Honor, about this believing an interested witness. You've got two, you've got two people that are clearly interested witnesses. The district court credited them when they said, we didn't talk about this job. Now, is it a, is it a reasonable inference that when you're, you've had one interview, and you're now riding along with that person for whatever, whoever scheduled it, that you're not going to discuss that job? Maybe not, but you're going to have an opportunity to ride along with the decision maker for an entire day, and that was never offered to Mr. Smooks. And, and maybe you just, maybe you disqualify yourself. Maybe, maybe you recuse yourself from the decision if you do that. But, that was never offered to Mr. Smooks. Does Reeves versus Sanderson plumbing, et cetera, affect our analysis in this case, and if so, how? You should be clarifying it. Apparently there's confusion that's out there. Well, I, I, I thought about that, your Honor, and I think, I think it does. I think what Reeves says is that, you know, a court is not to credit on a summary judgment motion evidence the jury is not required to believe. Now, what in this case is the, and, and, and Justice O'Connor specifically talked about. Evidence of an interested party. Of an interested party, that's correct. And this court in Hill versus Scranton said the same thing. And then in another panel, this court said, well, no, you've got to believe interested witnesses. Which runs totally opposite of what, of what the law has been in this for a hundred years ago. You were, interested witnesses weren't even competent to testify. I think on, I think on a case like this. In Hill law it was dicta, wasn't it? I'm sorry? In Hill it was dicta. Well, you know, I don't believe it was. Because Judge Roth did two footnotes in, in Hill. One was footnote 16, and that arguably was dicta, because there was contradictory evidence. But in footnote 22, there wasn't. There was the mayor, I believe, said that said something. There was nobody to contradict. And Judge, Judge Roth said, look, even though there's not specific contradiction, this is an interested witness who we don't credit on a motion for summary judgment. Your Honor, in, in this court's model jury instructions in, not this court, but, well, I guess it is this court's model jury instructions. It talks about how you can judge the credibility. The circuits. The circuits. Because there was no Court of Appeals judge on either committee, since I was on one of them. Well, but the third circuits, and then this is not unique to the circuit. The credibility of witnesses talks about, you can judge credibility of witnesses by judging whether they have an interest in the case. So if a jury can do that when a jury is deciding that, why cannot a summary judgment motion when the evidence favorable to the moving party, I get the benefit of, of inferences. And evidence favorable to the moving party is to be disbelieved. Why don't I get the benefit of that in this ride-along if we need to reach that? Again, if the court doesn't need to reach that, though, because the ride-along itself is evidence of favorable treatment that an, that an African American did not receive. Mr. Slooks had more education. She, he was highly educated as opposed to the high school graduate. That raises, you know, with a prima facie case and evidence of inconsistencies and implausibilities, even if I don't have direct evidence or a whiff of, of, of discrimination as I, I suppose from comments or something, I still can get to a jury on that and argue that there is, there is differential treatment here. And one person was, was more qualified. Once the African American interviewer was off that, off that panel, suddenly a person who wasn't quite as good, objectively and subjectively, I mean, two-tenths of a percent below, you know, that her, that his race or his gender played a role. But didn't she agree that they were sufficiently close to, how did the minor rank in, in? It was a 4.6 to 4.4, I believe, Your Honor. No, it was close. I, I don't disagree that it was close. But that, but she still had Snooks as higher. She still did, okay. Now we suddenly have the two white guys on the jury and suddenly, suddenly Mr. Snooks is, is worse in every area. And that's what the, and that's what the defendant is saying. Even though one of them is totally inconsistent with what they told the HRC, the other one about the, the fighting, you know, take it outside situation. I mean, that's an implausibility. If, if you're having, two people are having a fight and they're swearing at each other, and there's, there's one says take it outside, and that's the correct answer. That's implausible, Your Honor. And in fact, in fact, Mr. Cole said that was the wrong answer. Flat wrong. Not, not, not a degree of, of, of gray or anything. That was flat wrong answer. So could a jury find, could a jury find for your side? Absolutely. But that's not what the district court did here. The district court wrote the opinion as if it were findings of fact after, after a bench trial. That's really not the standard. My time's up, Your Honor, so if there are no questions. You can use your time, I think. Thank you. May it please the court. My name is Robert Coddington with the law firm of Kohn and Grigsby. It's my privilege to represent the Duquesne Light Company before the court today. The district court, in our opinion, got this exactly right. The court granted the defendant's motion for summary judgment, because there was no genuine issue of material fact here. Well, if you're right, what happens, and if we were to say that you're right, and we write a precedential opinion saying that the district court was right, what happens to Fuentes? How can Fuentes possibly survive affirming this kind of a summary judgment case? Fuentes would survive, Your Honor, because the analysis that was used was exactly the Fuentes analysis here. The court looked at the articulated reason that was presented for. But a jury could, for the reasons that we've discussed plus one, in question one, which I'm not sure that Mr. Corday's argued, but as I read question one, the employee tardiness. That McGill said that there were problems with Snook's lack of corporate policy. Cole said he had no problem with that answer. But taking question one aside, we've got the question about loud arguments, or arguments, and her response is, now, maybe things are different in Pittsburgh. But in Philadelphia, if someone says, take it outside, people know what that means. You know, you take it outside. Basically, that's a suggestion that you guys go outside, duke it out, and come back in when you're done. To tell, even if it doesn't mean something quite that explicit in Pittsburgh, because you folks out there are clearly more civil than we are, obviously. To tell, and two employees were arguing to take it outside, to say that that answer is better than the answer that Snook's answered. And again, the test here is not, obviously, the employee doesn't have to make the best decision, even a wise decision. They simply can't make a decision that violates one of the animuses that's projected into Title VII. But if there's enough for a jury to conclude that the reasons that they gave for hiring Storer are pretext. They've got, Storer's got this situation where she's got eight hours alone with McGill, and that could clearly give rise to some kind of favoritism. McGill said, that's not a problem, that didn't impact my judgment. Any jury could clearly find, wait a minute, how could it possibly be you have eight hours alone with somebody that you're going to interview for a job in two days, and that didn't impact your judgment? It gives somebody an inferred advantage? You've got the issue about the, I think it was the drug testing and the accident that initially McGill said, he didn't mention it. And Cole said, oh, it came up. And then McGill said, well, with prodding, he did mention it. There are these little inconsistencies, and sometimes not so little, throughout. And a jury could look at that and just say, well, they made a dumb decision, or maybe they'd agree that it is the best candidate. They could clearly conclude that it was a dumb decision, but there's nothing here to suggest that it was based upon Snook's race or gender. Or they could say, well, we're rejecting the reasons they actually gave. We find they're pretextual. The judges just told us, we can take that evidence of pretext along with Snook's being a member of a protected class and having made it as a promulgation case, and conclude that the actual reason, absent some better explanation than we've heard from the employer, is discrimination, either race or gender. And the gender may well just percolate out from the eight hours alone with the story. And maybe they conclude that McGill is just somebody who feels more comfortable working with a female employee. Your Honor, if I could make two points in response. The first, dealing with the interview and the interview questions. I think a critical point here is that Mr. Snooks admitted in his deposition that the notes that were taken accurately reflected both the questions that were asked and his responses. And with respect to those responses, he therefore admitted that he did not discuss progressive discipline in response to questions one and five. He also admits that he did not discuss drug testing until he was prompted, because the notes reflected that it was only after Mr. McGill asked him about drug testing that he responded to that. Initially, didn't McGill say he didn't discuss that at all? In his deposition, when he was asked whether he responded, Mr. Snooks responded about drug testing, he said no, that he did not. But he also acknowledged that his notes were accurate. And in the PHRC, the letter that we submitted to the PHRC, it did say that Mr. Snooks did not respond to the question in discussing about drug testing. But we also presented to the PHRC the notes. And those notes reflected that it wasn't until after he was prompted by Mr. McGill to discuss drug testing that he did discuss drug testing. Counsel, the first question that Judge McKee asked you when he started in this question was how can we preserve Fuentes? Let me read you a quote from Fuentes. I've already confessed my self-interest in preserving Fuentes since I was the trial judge. It says, in order to withstand a motion for summary judgment, Stooks must preserve evidence either that, either, and this is now a quote from the case, cast sufficient doubt upon each of the legitimate reasons preferred by defendants so that a fact finder could reasonably conclude that each reason was a fabrication. Or, not and, or allows the fact finder to infer that discrimination was more likely than not a motivating or determinative factor. So as I look at Fuentes, at least if you take this part of the quote, those are in the alternative. You don't have to prove both, just one of them. Now in this case, couldn't, isn't there enough evidence to conclude just simply that you folks, meaning Duquesne, had singled out the person who got the job as the one they wanted to get the job, and they just made it happen? That she was strong enough, at least, that they could make it happen. But that's not the only inference Fuentes would permit them to make. That's one inference that Fuentes said. Wouldn't it also permit them to draw under Fuentes another inference? That they produced a wrong reason. The reason they said he wasn't hired or promoted was not the real reason. And therefore, the real reason was discrimination. And don't we really hack away at Fuentes if we say, yeah, he could have given the, there's evidence that the reason they gave was not the right one, but it's not discrimination. The preferred reason is that they liked her and didn't like him. Nothing to do with race. Your Honor, I agree that Fuentes has those two alternative responses to the articulated business reason. It's our position, and the district court agreed with us, that there are no genuine issues of fact that would allow a reasonable jury to find that the reasons given by Duquesne Light were untrue or were pretext. And that, again, going back to the fact that it's admitted by Mr. Snooks what took place in that interview and what his responses were. And therefore, what he is really asking the court to do is to second guess what Duquesne Light decided based upon those interview responses that he admitted. There's no issue of fact that's what this. Ride along for just, what, two days or three days before the second interview. When there's two fairly close candidates, I think by anybody's reckoning, two qualified close candidates here. You don't, you don't think that a jury could conclude that the fine points of the questioning or whether he said it when it was prompted or not prompted is not the real reason he wasn't hired. It's just that they, that he grew to like her. She was, by all accounts, a very personable, had strong personal and social skills. Couldn't they conclude that they gave a phony reason, an untrue reason? Your Honor, I think what that would require would be for the jury to assume facts that aren't there. Just because the ride along took place does not present facts that something inappropriate happened where she was given tips as to what the later interview was going to contain. She was somehow given some advantage that way. Just that she got none for advantage. And when employers make promotions from within, it's very common that the person making the decision may have more contact with one than another. And if that were enough to create an issue of fact that would have to go to a jury, then it would seem that every promotion case that takes place with internal candidates would have that as an automatic right to go to a jury. Because that always happens. There's never balance as to the amount of contact. There's not usually balance, but you don't see this kind of imbalance. I've never seen this kind of imbalance in 15 years here. And it seems to me that if McGill was set on making sure that the decision was going to be made on the results of interview two, you're saying, no, that's you need to get me somebody else for that ride along. I don't think it's either that or you make the ride along after the second interview and after you pick a candidate. And Your Honor, I think that if you look at the record as a whole, it would show that that inference is not a reasonable inference because of the way the entire process took place. That if Mr. McGill had in his mind that he wanted Storer from the very beginning, there would have been no need to have a second set of interviews like they did. Nor would Mr. McGill. Why wouldn't there have been? If you don't do that, then you've got Storer being ranked second. You've got to do something to rise her to the top. You schedule the interview. And this is being very pessimistic. I'm not suggesting any of this thing happened. But a juror could look at this work. So he scheduled the second interview and Ms. Minor's going to be on vacation. So you get rid of the African-American who's involved in the process. And then you engage in this very subjective interpretation of the same questions that are asked of both candidates in such a way as to give Storer the benefit of the doubt, even when her answers seem not that great. Like, why do you want the job? And what would you do if you found two employees are arguing? Both of those seem to be horrendous answers that were credited over Snook's answers. And whether you think Snook's answer was really great or not, it seems to me, if I want the job because it's more of a challenge, I want to think, I want to use my brain at stimulating, is better than I want more money in my pension. Your Honor, if I could respond to that. That was a mischaracterization by the plaintiff as to what the answer was that Ms. Storer gave to the question about why she wanted the job. The notes that are in the record reflect that she mentioned pension as one of a number of things. The other things included wanting a challenge and wanting a change of job and a future. So the pension was only one aspect. It was not the whole answer. The scheduling of the second interview was actually Ms. Miner's suggestion that they go forward even though she was on vacation. So it was not directed by Mr. McGill at all. Who picked the date for the second interview? Your Honor, I don't know that it's in the record as to who actually picked the precise date. What is in the record is her email to Mr. McGill and Mr. Cole saying that you should do that. She wasn't a major player in that regard. Your Honor, I would also like to address the question that was raised about the impact of Reeves  The argument that's being raised that Reeves says that the court on a summary judgment motion must always disregard any testimony presented by the movement from an interested witness is wrong and completely stretches Reeves beyond what was said there. First of all, the words that Reeves used said that when evidence that's presented by the moving party that's uncontradicted and unimpeached, at least as to disinterested witnesses, would be credited. The court, if it wanted to say only disinterested witness testimony would be considered, that's what they would have said. They said at least, which opens the prospect that there's more evidence such as from interested witnesses that could come in. The interpretation they've placed on Reeves also would totally eviscerate McDonnell Douglas analysis because what they would say is it's almost always the case that when corporations are speaking and presenting what their legitimate reason was for the decision, it's testimony of the decision maker. Corporations have to speak through employees. If you accept their interpretation of Reeves, that would mean the employer could never present evidence of what its articulated reason was. So you would get summary judgment in every case where there's a prima facie case. You'd never get to the second and third stages of the McDonnell Douglas analysis. Also, the seminal Supreme Court case on summary judgment, the Anderson versus Liberty Lobby case, that case specifically involved the testimony of, it's a libel case, it involved the employer, I'm sorry, the defendant. The evidence it presented was the deposition or the affidavit of the person who wrote the article who was an employee of the publisher explaining what he did to research it and why it was truthful as to what he wrote. The plaintiff in response presented no evidence to contradict that, but argued that the court should deny summary judgment because a jury could always disbelieve what that person said. And the Supreme Court in Anderson said, no, that's not enough. Rule 56 requires you to do more in response to a motion for summary judgment than to just say that the jury could disbelieve it. And that's what they're attempting to do here in this case. Reeves, obviously, if it were going to change the landscape, would have said so much more directly than using the words at least, which is what is being relied upon here. Also, every circuit that's addressed this particular argument. Which one, the Reeves argument? Yes, that's being raised by the plaintiffs here, has rejected it. In the district court's decision, they cite two Sixth Circuit cases where it was rejected and explained in great detail as to why Reeves doesn't say what they're alleging here. We've cited to a Fifth Circuit case in our briefs just a little over a month ago. The First Circuit ruled on that issue as well in a case called Dennis versus Osram, Pennsylvania, 549 F3rd 851. And the Seventh Circuit also has rejected it in a case called Trailer versus Brown, which is 295 F3rd 783. I see my time's up. If there's anything else that I could offer to you, I'd be happy to. Thank you. Your Honor, to briefly address the drug issue, because it seems to have been the only real difference that we have on what the record is. The companies told the PHRC Snooks made no mention of having employee drug or alcohol tested. McGill then testifies in his deposition, with respect to knowledge of the drug testing, did Mr. Snooks talk at all about the drug testing policy during his interview? No. And then Cole, it's in Cole's notes. So, Your Honor, there's an inconsistency in Fuente's terms on a very material issue, because they really narrowed it down to three questions that they said Snooks did, didn't do as well as Stoer did. And one of them was the drug policy question. The other was the take it outside. And by the way, Judge McKee, we mean the same thing in Pittsburgh, too. Take it outside as do take it out. Sure. The football, I guess, means the same thing.  And so you. A bottle. An Iron City bottle, yes, that's right. And again, Your Honor, this court has often said you have to look at all the evidence as a whole, and that's the point here. These are all, the district court didn't do that. The district court went through each individual strand, just like my friend just did, and said, well, that can't be it, and that can't be it. But mushed, mushed, when read together, those inconsistencies along with the fact that you've got a college degree and a person that didn't even submit a resume for that matter, Your Honor, until afterwards. And there's evidence in the record of that. I was going to ask about that. Yeah. Your statement, your client's point statement is that they didn't have the resume. The one woman can't recall the conversation currently where your client gets that conclusion from. Right. I should have asked Mr. Connaughton about that, but is there a clear, is the record such, and I'm not leaving a disinterested party. Yeah, I'm sorry. Is the record that clear on the issue of the resume? Well, Your Honor, I mean, the record is clear for summary judgment purposes that Mr. Kellerman went to a supervisor. The supervisor told him that Storer didn't even submit a resume until, and that's important for two reasons, Your Honor, because one is that they said they looked at her resume. Mr. Snooks. Yes. Or, no, Ms. Storer. Mr. Snooks went to the manager and said that Ms. Storer didn't even submit a resume. The employer claims that it reviewed Ms. Storer's resume. If that's the case, that's another inconsistency that would preclude summary judgment. And just briefly, because my time's almost up, Your Honor, the issue of Reeves, it's not us arguing it, it's what this court said in Hill, and I'll read Judge Ross. She says, as noted above, when evaluating a summary judgment motion, a court should not consider even uncontradicted testimony of an interested witness where that testimony supports the movement, see Reeves, with a citation to Reeves. And this court has said that in five or six continuous cases. It's not, this isn't something that we've made up, and it makes sense, Your Honor. Can, can. No, no, Mr. Connolly, it's a very good argument that if that's true, what happens to McDonnell Douglas shifting burden? Well, Your Honor, I think, I think what, I think, I agree that we have to meet some evidence of the Fuentes to get past summary judgment. But on issues, so I, there may be something more that we would have to do other than you can't just disbelieve this one thing. In this situation, what we have is a very narrow issue. Do you believe them? Can a jury disbelieve their statement that on the ride along, you know, the job just didn't, wasn't even there. We didn't even talk about it. It didn't come up with Storer and McGill. And that's really where, that's really the only uncontradicted factual question in this case. So the very narrow issue is, does a, does a fact finder have to believe that, given all the other circumstantial evidence that he, they got a better, they got a better deal? And my time's up, Your Honor. Thank you. Thank you very much. We take the matter under advisement, and we thank both counsel for a very, very well argued case. Thank you very much, both of you.